**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Canaan Enterprises, Inc., | ) | C/A NO. 3:06-3254-CMC |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| Mobile Container Service, Inc., | ) | |
| Defendant. | ) | |

This case is before the court for consideration of two motions: Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Transfer Venue, and Plaintiff's Motion for Leave to File Second Amended Complaint. For the reasons set forth below, the court grants Defendant's Motion to Transfer this case to the United States District Court for the Western District of Virginia, and denies without prejudice Plaintiff's Motion for Leave to File Second Amended Complaint.

**Factual and Procedural Background.**

At issue in these motions are two franchise agreements. Keith Becker entered into a franchise agreement on January 31, 1995, with Mobile Container Service, Inc. ("MCS") that granted to Mr. Becker an MCS franchise with regard to certain geographic areas set forth in that agreement and as amended (the "1995 Franchise Agreement"). Shortly thereafter, the contract was assigned, with the permission of MCS, to Canaan Enterprises, Inc. ("Canaan Enterprises"), a company owned and operated by Mr. Becker. The 1995 Franchise Agreement provides that disputes between the parties arising under the agreement may be filed and maintained in Shelby County, Tennessee.

In 2003, Mr. Becker entered into another contract involving an MCS Franchise Agreement originally granted by MCS to a third party, Henry Scarce. The original Franchise Agreement between Mr. Scarce and MCS was executed in 1991 and granted Mr. Scarce certain MCS franchise rights for a ten year period. That Franchise Agreement contains very similar terms and provisions as (but covers a different area from) the 1995 Franchise Agreement with Plaintiff Canaan Enterprises. The Scarce Franchise Agreement had been renewed and amended pursuant to a Franchise Agreement Renewal Amendment executed on November 15, 2001. The Franchise Agreement Renewal Amendment contained a mandatory forum selection clause that required all lawsuits arising out of the Franchise Agreement be brought in Pittsylvania County, Virginia.

Plaintiff acknowledges that on September 22, 2003, Mr. Becker executed an Assignment of Franchise Agreement as to certain territories in the Scarce Agreement. Pursuant to that Assignment, Henry Scarce assigned to Mr. Becker, with the consent of MCS, the portion of the Scarce Franchise Agreement covering Lee and Sumter Counties in South Carolina. Pursuant to the terms of the Assignment of Franchise Agreement, this second Franchise Agreement between Becker and MCS (the "2003 Franchise Agreement") ran for ten years from the date of the execution of the Assignment, until September 22, 2013. Mr. Becker negotiated and paid a reduced transfer fee to MCS of $750. The Assignment specifically binds Becker to the underlying Franchise Agreement between Scarce and MCS. Through counsel, Mr. Becker disputes reviewing or obtaining a copy of the Scarce/MCS Franchise Agreement that was the subject of the 2003 Assignment.

In or about September of 2006, MCS claims to have obtained information leading it to believe that Mr. Becker was operating a competing business, Becker Complete Compactor, Inc. ("Becker Complete Compactor"), and that Mr. Becker and Canaan Enterprises were diverting or

2

attempting to divert MCS Franchise Agreement business to that entity. Counsel for MCS sent Mr. Becker a cease and desist letter dated September 21, 2006, demanding that he immediately cease competing against MCS and that he provide MCS with a complete accounting of all funds received by Becker Complete Compactor. The letter warned that failure to adhere to these demands could result in termination of the 1995 Franchise Agreement and legal action being commenced against Mr. Becker and Canaan Enterprises.

Mr. Becker did not respond directly to the MCS cease and desist letter. Instead, on October 16, 2006, Canaan Enterprises filed a declaratory judgment action in state court in Lexington County, South Carolina seeking a declaration that: (a) the Franchise Agreement entered into between Mr. Becker and MCS on January 31, 1995 had expired by its terms on January 31, 2005; (b) the two-year post-term non-compete provision of that Franchise Agreement was unenforceable; and (c) MCS was not entitled to an accounting from Becker Complete Compactor. This declaratory judgment action did not refer to the 2003 Franchise Agreement. On November 17, 2006, MCS removed this action to federal court.

By letter dated November 22, 2006, MCS notified plaintiff that the 1995 Franchise Agreement was terminated as of that date due to Plaintiff's breach that had not been cured in response to the cease and desist letter. Accordingly, the parties do not dispute that the 1995 Franchise Agreement has been terminated, although they may disagree as to why or when the agreement was terminated.

Plaintiff filed an amended complaint on November 26, 2006, in an apparent attempt to support a motion to remand the case to state court. On November 28, 2006, MCS filed suit in the Western District of Virginia against Keith Becker and Becker Complete Compactor for claims

arising out of an alleged breach of the 2003 Franchise Agreement. That case (the "Virginia Case") was filed in Virginia in accordance with the forum selection clause contained in the 2001 Franchise Agreement Renewal Amendment to the Scarce/MCS Franchise Agreement that was the subject of the 2003 Assignment to Mr. Becker. In the Virginia Case, MCS seeks damages and injunctive relief against Canaan and Becker. As stated above, that agreement, as amended by the 2003 Assignment, does not expire until 2013.

In this action, by motion filed November 27, 2006, MCS moved to dismiss the original complaint or, in the alternative, to transfer the case to the Western District of Virginia, where it could be joined with the Virginia Case. MCS filed a similar motion to dismiss or transfer venue with regard to Plaintiff's amended complaint on January 8, 2007. The parties agreed that MCS's motion to dismiss or transfer venue directed to the original complaint was moot or superceded by the motion to dismiss or transfer venue directed to the amended complaint.

Plaintiff filed a motion to remand this case to state court on December 18, 2006, but subsequently withdrew that motion.

On January 22, 2007, Canaan Enterprises filed a motion for leave to file a second amended complaint. The second amended complaint, if allowed, would add Keith Becker and Becker Complete Compactor as plaintiffs in this action and assert additional claims relating to and arising from the 2003 Franchise Agreement, which is the subject of the Virginia Case.

## Analysis

**I.     Defendant's motion to dismiss the amended complaint or to transfer venue.**

In its motion, MCS submits that the Virginia Case, unlike this case, involves an in-term franchise agreement. MCS argues that Canaan's amended complaint in this action does not present

a proper case for declaratory relief and does not present a sufficient case or controversy appropriate for resolution by this court because any decision rendered in this action will not be necessary or appropriate and would be mooted by the proceedings in the Western District of Virginia. In this case, Canaan seeks a declaration that the 1995 Franchise Agreement has been terminated, that MCS is not entitled to an accounting under the 1995 Franchise Agreement, and that the post-termination non-competition provisions of the 1995 Franchise Agreement are unenforceable. As noted above, there is no dispute that the 1995 Franchise Agreement has expired or been terminated.

MCS contends that damages will be due from Canaan to MCS under the 2003 Franchise Agreement regardless of whether the 1995 Franchise Agreement was terminated before November 22, 2006 and whether or not MCS is entitled to an accounting under the 1995 Franchise Agreement. Further, a declaration of the enforceability of the post-termination non-competition provisions of the 1995 Franchise Agreement will be unnecessary and meaningless if the non-competition and assignment of territory provisions of the in-term 2003 Franchise Agreement are enforced in the Virginia Case under Virginia law.

In addition, MCS contends that this action should be dismissed or venue transferred to the Western District of Virginia pursuant to Fed. R. Civ. P. 12(b)(3) and other applicable law because the 2003 Franchise Agreement contains both a Virginia choice-of-law provision and an enforceable choice of venue clause.

In its memorandum in opposition to MCS's motion, Plaintiff argues that the 2003 Franchise Agreement is void or unenforceable. The memorandum:

> Contends that the 2003 Franchise Agreement was procured by fraud and involved unfair and deceptive non-disclosure and violation of unspecified state and federal law, thus, the provisions of that agreement are unenforceable as a matter of law.

5

> (*See* Pl's. Opp. to Def's. Mot. to Dismiss or, in the alternative, to Transfer Venue, p. 2).

> States that the documents "were never disclosed or otherwise provided to Plaintiff . . . rendering any such alleged 2003 Franchise Agreement void and unenforceable." (Pl's. Opp., pp. 3-4).

> Denies that Becker had an opportunity to read the 2003 Franchise Agreement. (*See* Pl's. Opp., p. 18).

> States that, by agreeing to the Assignment of the 2003 Franchise Agreement, "Plaintiff intended merely to expand its current business into Lee and Sumter Counties. In addition, Defendant falsely represented to Plaintiffs [sic] that the alleged 2003 Franchise Agreement would allow Plaintiffs [sic] to operate in Lee and Sumter Counties under Canaan's 1995 Franchise Agreement." (Pl's. Opp., p. 17).

Plaintiff does not dispute that Becker signed the Assignment of the 2003 Franchise Agreement. Pursuant to the terms of the Assignment, Becker accepted all of the rights and obligations of the Scarce Franchise Agreement and agreed that executing the Assignment would "make [Becker] a party to and [he] shall be bound by all the provisions of the [Scarce] Franchise Agreement." (Ex. "C" p.1, ¶ 3). Further, in this 2003 Assignment, Becker agreed that "this agreement shall be effective and binding from the date of its approval by [MCS] and shall continue for a period of (10) years thereafter." (*Id.* p. 1, ¶ 4). Accordingly, Becker agreed to be bound by the terms of the Scarce Franchise Agreement and agreed that it would be effective and binding for 10 years beginning in September of 2003.

Although counsel for Becker suggests that Becker "had no opportunity to read" the documents, the Assignment itself suggests otherwise. Provision (5) of the Assignment, as originally typed, reads, "A transfer fee equal to twenty percent (20%) of the current Franchise Fee of like size

territory shall be charged." Of that typewritten clause, all the words between "A transfer fee" and "shall be charged" have been marked out by hand and, written above, is the figure "$750.00." Underneath this handwritten edit are the initials "K.B." Immediately above the hand-edited provision, Provision (4) states that the agreement shall be binding for ten (10) years from the date of the "approval by Franchisor."

Plaintiff has no credible argument that it could not anticipate suit under the 2003 Franchise Agreement being brought in Virginia or that Becker would not have entered into the 2003 Franchise Agreement had he been aware of the forum selection clause. As Plaintiff admits, the 1995 Franchise Agreement expressly allowed suit to be brought in Tennessee. (S*ee* Pl's. Opp., p. 19 (citing 1995 Franchise Agreement at ¶ XXI)). As Becker was willing to agree to the possibility of litigation in Tennessee under the 1995 Franchise Agreement, there would be no reason to suspect that Becker would not also agree to the Virginia choice of forum clause contained in the 2003 Franchise Agreement. In any event, Becker could not reasonably have believed that any litigation arising under his franchise agreements would be conducted in South Carolina.

This court finds and concludes that the September 22, 2003 Assignment of Franchise Agreement signed by Mr. Becker placed him on notice of the existence of the Scarce Franchise Agreement and constitutes *prima facie* evidence that Mr. Becker agreed to be bound by the terms of the Franchise Agreement that was assigned to him, including the terms of the 2001 Franchise Agreement Renewal Amendment. There is thus *prima facie* evidence that Mr. Becker agreed to be bound by the Virginia forum selection clause.

Having found *prima facie* evidence of a valid and enforceable forum selection clause in the 2003 Franchise Agreement, this court further finds that this action is trivial relative to the Virginia

Case. Whether or not the 1995 Franchise Agreement prohibits Canaan Enterprises from competing against MCS or entitles MCS to an accounting, the existence of the 2003 Franchise Agreement that is the subject of the Virginia Case would preclude this court from declaring that Mr. Becker could compete against MCS, and the relationship of the parties would remain the same pending resolution of the Virginia Case.

Nor is this court persuaded that the first-to-file rule applies under the present circumstances. Plaintiff's initial suit was filed in imminent anticipation of litigation. MCS is the natural plaintiff in this action and the actual plaintiff in the Virginia Case. When a district court finds that a party has filed a declaratory judgment action in a race to a favorable court, it may decline to entertain jurisdiction. *See Ven-Fuel, Inc.* v. *Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). Similarly, the Fourth Circuit does not "place undue significance" on the fact that a declaratory action was filed first in a "race to the courthouse door, particularly" where the declaratory plaintiff was on "constructive notice" of the opposing party's "intent to sue." *Centennial Life Ins. Co.* v. *Poston*, 88 F.3d 255, 258 (4th Cir. 1996).

Having concluded that the defendant's motion should be granted, this Court must next consider what relief is most appropriate: dismissal, stay, or transfer of this case pending disposition of the Virginia Case. There is a chance that there will be some issue to be resolved in this case after the disposition of the Virginia Case. (If, for example, there is a final ruling in the Virginia Case that the 2003 Franchise Agreement is void, the issues regarding MCS' right to an accounting and the enforceability of the post-termination non-competition provisions of the 1995 Franchise Agreement may become relevant.) Accordingly, dismissal of this action appears inappropriate. At the hearing on this motion, counsel for both parties agreed that a transfer of this case to the Western District of

Virginia was more desirable and appropriate than a stay pending resolution of the Virginia Case. In the event of a transfer, the Virginia Court would have, for example, more flexibility in determining whether to consolidate the two cases or what claims should be allowed in the two cases. This court agrees. Accordingly, Defendant's motion to dismiss or transfer venue is granted to the extent that it seeks a transfer of this case to the United States District Court for the Western District of Virginia.

## II.     Plaintiff's motion for leave to file a second amended complaint.

Pursuant to Rule 15(a), Fed. R. Civ. P., leave of court is required to file an amended complaint if a plaintiff has already amended its complaint once. Plaintiff has already availed itself of the right to amend the complaint once as a matter of right, and, under the circumstances, the court concludes that granting the motion for leave to amend would be inappropriate.

The proposed second amended complaint would add two new plaintiffs to this case and add claims that relate to the 2003 Franchise Agreement, which is the subject of the Virginia Case. As stated above, this court has concluded that Defendant has presented *prima facie* evidence that claims arising under the 2003 Franchise Agreement are subject to a mandatory Virginia choice of forum provision. The claims MCS has asserted in the Virginia Case are not compulsory counterclaims in this action because those claims arise out of a separate transaction or occurrence—the 2003 Franchise Agreement as opposed to the 1995 Franchise Agreement at issue in this case. But because they arise out of the 2003 Franchise Agreement, the additional claims Canaan Enterprises seeks to add would be compulsory counterclaims to MCS' claims in the Virginia Case. If asserted, these claims should be brought in the Virginia Case.

The Western District of Virginia may, of course, dispose of the Virginia Case and conclude

that the appropriate action at that point would be to transfer this case back to this court for disposition of any remaining issues.

Accordingly, **IT IS HEREBY ORDERED** that MCS's motion to dismiss is **denied**, the motion to transfer venue is **granted**, and Canaan's Motion for Leave to File a Second Amended Complaint is **denied without prejudice**.

The Clerk shall transfer this matter to the United States District Court for the Western District of Virginia, Danville Division.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie<br>
CAMERON McGOWAN CURRIE<br>
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 7, 2007

06-3254 Canaan Enterprises v. MCS e order transferring case.wpd